IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| STUART R. DAY, ET AL. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| VS. | * | |
| | * | NO: 4:09CV00031 SWW |
| CELADON TRUCKING SERVICES, INC. | * | |
| | * | |
| | * | |
| Defendant | | |

**<u>ORDER</u>**

Forty-four former employees of Continental Express, Inc. ("Continental") bring this putative class action against Celadon Trucking Services, Inc. ("Celadon"), alleging that Celadon purchased Continental and violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109, by failing to give Plaintiffs sixty days' notice before terminating their employment. Before the Court is Plaintiffs' second motion for class certification (docket entries #32, #33), Celadon's response in opposition (docket entries #38, #39), and Plaintiffs' reply (docket entry #41). After careful consideration, and for reasons that follow, the motion for class certification will be granted.

**I.**

Plaintiffs allege that they worked for Continental when the company was purchased by Celadon. They allege that the day the Celadon purchased Continental, December 4, 2008, they learned that their employment would end effective December 17, 2008. Plaintiffs report that between December 5 and 17, 2008, Celadon terminated their employment and the employment

1

of other similarly-situated employees without notice and in violation of the WARN Act.

The WARN Act prohibits employers from ordering "a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). The Act provides that any employer who orders a plant closing[1] or mass layoff[2] without giving the required notice "shall be liable to each aggrieved employee who suffers an employment loss as a result of such a closing or layoff" for back pay and benefits. *See* 29 U.S.C. § 2104(a)(1). An "employment loss" under the Act means (1) an employment termination, other than a discharge for cause, voluntary departure, or retirement; (2) a layoff exceeding 6 months; or (3) a reduction in hours of work of more than 50 percent during each month of any 6-month period. 29 U.S.C. § 2104.

In the event of a sale of part or all of an employer's business, the Act provides:

> [T]he seller shall be responsible for providing notice for any plant closing or mass layoff . . . up to and including the effective date of the sale. After the effective date of the sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title. Notwithstanding any other provision of this chapter, any person who is an employee of the seller (other than a part-time employee) as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

---

[1]The term "plant closing" under the Act means "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2102(a)(2).

[2]The term "mass layoff" under the Act "means a reduction in force which-- (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for--(i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)." 29 U.S.C. § 2102(a)(3).

29 U.S.C. § 2101(b)(1).

A person seeking to enforce an employer's liability under the WARN Act "may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred." 29 U.S.C. § 2104(5).

## II.

Plaintiffs move for certification of a class identified as "all persons who were employees of the former Continental operation in Little Rock and were terminated following the sale to Defendant in December of 2008, and who did not receive [sixty days'] notice that a plant closing and/or mass layoff was going to take place at that time." Amend. Compl., ¶ 23.

A class action may be properly certified only if a trial court is satisfied, after rigorous analysis, that each of the prerequisites for certification have been satisfied. Federal Rule of Civil Procedure 23(a) lists four criteria for the maintenance of a class: (1) that the class be so numerous that joinder of all members is impracticable; (2) that common questions of law and fact exist among potential class members; (3) that claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that representative parties will fairly and adequately protect the interests of the class. In addition to the foregoing requirements, a proposed class must fall in to one of three categories provided under Rule 23(b).

*Numerosity*

Under Rule 23, a class action is warranted only if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the party moving for

certification need not show the exact number of potential class members, "the party does bear the burden of showing impracticability [of joinder], and mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (3d. ed. 2005).

Plaintiffs assert that the putative class includes approximately 449 individuals, who were employed at Continental's Little Rock worksite before and after December 4, 2008 and were terminated without receiving sixty days' notice. To support the claim that such a class exists, Plaintiffs provide affidavits by Timothy A. Hodnett and Randy Day, who served as vice presidents for Continental before and after Celadon purchased the company on December 4, 2008.[3] *See* docket entry #32, Exs. A, B. Both affiants testify that none of the employees who worked for Continental at the company's corporate offices on December 4, 2008 and remained employed after that date received sixty days' notice that their employment would end.

Plaintiffs also provide printouts produced by Celadon in response to discovery requests, which show that Continental employed 658 employees on December 4, 2008 (545 drivers and 113 corporate office employees) and that following the sale to Celadon, only 209 former Continental employees were offered employment with Celadon. *See* docket entry #32, Exs. A, B, (Attachs. #1, #2), Ex. C. Plaintiffs declare: "Thus, according to Defendant's own responses, approximately 449 individuals suffered an 'employment loss' as a result of the sale and would be entitled to protection under the WARN Act." Docket entry #24, at 3.

---

[3]The first paragraph of Hodnett's affidavit states: "I worked for [Continental] from August 31, 1987 until [it] was sold to [Celadon] on or about December 4, 2007." However, elsewhere in his affidavit, Hodnett states that the sale occurred on December 4, 2008, which agrees with the date of sale alleged in the amended complaint.

The Court finds that Plaintiffs have demonstrated that approximately 449 individuals qualify for membership in the proposed class, that joinder is impracticable, and that the numerosity requirement is met. *See Alberts v. Nash Finch Co.* 245 F.R.D. 399, 409 (D. Minn.,2007)(finding a putative class of 74 plaintiffs sufficient to satisfy numerosity requirement in WARN Act case).

*Commonality and Typicality*

The commonality and typicality requirements tend to merge and serve as "guideposts for determining whether under the particular circumstances maintenance of a class is economical and whether the named plaintiff's claims and the claims of the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon*, 102 S. Ct. 2364, 2371 n.13 (1982). Although the commonality and typicality requirements work together to assure judicial economy and adequate representation, they remain separate inquiries because commonality focuses on class claims, while typicality examines the relationship between the representative party's claims and the class claims.

The commonality requirement does not require that every question of law or fact be common to every member of the class and may be satisfied, for example, "'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)(quoting *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)). Here, all members of the putative class claim that they did not receive advance, sixty days' notice regarding termination of their employment in violation of the WARN Act.

The WARN Act provides that in the case of a sale of part or all of an employer's

business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff and "any person who is an employee of the seller (other than a part-time employee) as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale." 29 U.S.C.A. § 2101.  Celadon defends that it did not have a duty to notify Plaintiffs pursuant to the foregoing provision because it did not purchase Continental as a going concern, and the sale was limited to tractors, trailers, and other vehicles.   Whether Celadon purchased all or part of Continental's business and had a duty to provide notice under the WARN Act is a question common to all putative class members' claims, and the Court finds that the commonality requirement is met.

The typicality requirement is satisfied with "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990)(citations omitted).  Here, Plaintiffs' grievances are indistinguishable from the putative class claims, and the Court finds that the typicality requirement is satisfied.

### *Adequate Representation*

Adequacy of representation is perhaps the most important of all prerequisites to certification of a class action, *see Bishop v. Committee on Professional Ethics and Conduct*, 686 F.2d 1278, 1288 (8th Cir. 1982), and requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry also  serves to uncover conflicts of interest between the named parties and the class they seek to represent.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250 (1997).

Plaintiffs contend that they are adequate representatives because they are represented by competent, experienced attorneys, and their interests are coextensive with the interests of the putative class. *See* Amend. Compl., ¶ 28. Despite the lack of specific information regarding the named plaintiffs' personal qualifications to serve as class representatives, the Court finds that they are adequate representatives of the putative class. Celadon raises no objection to representation by the named plaintiffs, there is no evidence that the named plaintiffs have ceded control to counsel, and there is no indication of competing interests between the named plaintiffs and the class they seek to represent. Although nothing in the present record casts doubt on the ability of the named plaintiffs to vigorously pursue the interests of the putative class, if subsequent developments call the adequacy of representation into question, the Court will reconsider its finding that the named plaintiffs qualify as adequate class representatives.

*Rule 23(b)*

Plaintiffs seek certification of a class under Rule 23(b)(2)[4] or 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Matters pertinent to the Court's inquiry under Rule 23(b)(3) include: (A) the interest of members of the class in individually controlling the

---

[4]Rule 23(b)(2) is intended to reach situations where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Furthermore, class certification is proper under Rule 23(b)(2) only when the primary relief sought is injunctive or declaratory. Here, Plaintiffs seek back pay and benefits, not injunctive or declaratory relief, thus certification under Rule 23(b)(2) is not appropriate.

prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3).

The court is unaware of any other litigation concerning the controversy at issue in this case, and there is no indication that class members would prefer to bring separate actions. In fact, it is likely that the costs of litigation would preclude most individual employees from bringing separate actions. Further, Celadon does not argue that proceeding in this forum is undesirable or that management of a class action would be difficult, and the Court finds that concentrating the litigation in this Court and proceeding on a class-wide basis will conserve judicial and private resources.

Finally, the Court is unaware of particular difficulties associated with the management of this class action. Whether Celadon failed in a duty to give notice as required under the WARN Act depends on the resolution of issues that are common to all class members, and the question is particularly well-suited for class action procedure. Remedies under the WARN Act include back pay and benefits for the period of the violation, *see* 29 U.S.C. § 2104, and determining damages should be a straight-forward process. In sum, the Court finds that class certification under Rule 23(b)(3) is appropriate.

For the reasons stated, Plaintiffs' renewed motion for class certification (docket entry #32) is GRANTED. Within 30 days from the date of this Order, class counsel shall file and serve a proposed form of notice to class members that complies with the requirements of

Fed.R.Civ.P. 23(c)(2)(B). Within 10 days from the date class counsel files and serves the proposed form of notice, defendant shall file and serve any objections to that proposed form of notice.

    IT IS SO ORDERED THIS 16TH DAY OF AUGUST, 2010.

                                <u>/s/Susan Webber Wright</u>

                                UNITED STATES DISTRICT JUDGE